UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTOR DIMAIO,

        Plaintiff

v.

DEMOCRATIC NATIONAL COMMITTEE
-and—FLORIDA DEMOCRATIC PARTY,

        Defendants.

Case No. 8:07-cv-1552-T-26MAP

Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim--
**Dispositive Motion**

## MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW Defendant Democratic National Committee ("DNC"), by and through its undersigned attorneys and, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves the Court for an order dismissing the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

In summary, as set forth more fully below, for three reasons, the Complaint does not state any federal cause of action entitling plaintiff to relief. *First*, the Complaint fails to establish any federal cause of action against the DNC because the facts stated in the Complaint do not establish that the DNC acted under color of state law and therefore the DNC can not have violated the 14th Amendment. *Second*, even if the actions of the DNC constituted state action, it is well-established that the national political parties have a constitutionally-protected right to determine the method of selection of delegates to their national nominating conventions; that the states do not have the power to require the

{TP324099;1}

parties to recognize the results of state-run primaries in the selection of delegates; and that there is no countervailing right on the part of an individual voter to dictate the method of delegate selection or to use the courts to do so. *Third*, plaintiff is not entitled to a declaratory judgment because he does not assert that the DNC's action actually violates any law or that he has been injured by such action; rather, he is merely requesting an advisory opinion.

## ALLEGATIONS OF THE COMPLAINT

In his complaint, Plaintiff alleges that he is a registered voter affiliated with the Democratic Party. Complaint ¶5. The DNC has promulgated rules for the selection of delegates to the 2008 Democratic National Convention. *Id.* ¶3. Defendant Florida Democratic Party is responsible for conducting the process of selecting delegates from Florida in accordance with those national party rules. *Id.* ¶4.

The DNC's Delegate Selection Rules—which are attached to the Complaint—provide that no binding presidential preference primary or caucus can be held prior to the first Tuesday in February of 2008, *i.e.*, February 5, 2008, with the exception of four states: Iowa, New Hampshire, Nevada and South Carolina. Complaint ¶6; Delegate Selection Rules (Ex. A to Complaint) Rule 11(A) at p. 12. The state of Florida passed a law, codified at section 103.101, Florida Statutes, providing for a state-run presidential preference primary to be held on the last Tuesday in January, which is January 29, 2008. Complaint ¶8. For the Florida Democratic Party ("FDP") to treat the state-run January 29 primary as binding—that is, to use it to allocate delegate positions among presidential candidates—would violate the DNC's rules. *Id.* ¶9; *see* Delegate Selection Rules 11(A) at p. 12 and 20(C)(1) at p. 20.

The DNC's Delegate Selection Rules provide that if any state party treats as binding a primary or caucus that violates the DNC rules on timing, that state party automatically loses 50% of its delegates to the Convention; and no member of the DNC and no Member of Congress from that state may attend the Convention as a delegate. Delegate Selection Rules 20(C)(1)(a) at p. 20; Complaint ¶7. In addition, the Delegate Selection Rules authorize the DNC's Rules and Bylaws Committee to impose further sanctions, including further reduction of the state's delegation. Delegate Selection Rules 20(C)(5) and (6) at p. 21. On August 25, 2007, the DNC's Rules and Bylaws Committee voted to reduce Florida's delegation by 100%, unless the state party develops and submits an alternative, party-run process for allocation and selection of delegates, and that process begins (*i.e.*, a party-run primary or caucus takes place) on or after February 5, 2008 as required by the Rules. Complaint ¶¶ 9, 13.

The Complaint alleges that, "by imposing sanctions of refusing to recognize the results of Florida's primary election, pursuant to Florida Statute 103.101, and by refusing to seat the Florida delegation so elected, the Defendant [DNC] may be violating [plaintiff's] rights under Article II and the 14th Amendment of the United States Constitution." Complaint ¶10. The Complaint further alleges that the "DNC may or may not refuse to seat delegates who are members of their party… because the state in which the electors of the delegates resided scheduled its primary election earlier than as provided for in the National Party's rules." *Id.* ¶12.

With respect to relief, the Complaint asks that, "[i]f the decision of the National Party violates the Plaintiff's constitutional rights, it would be appropriate for this court to make such a finding." *Id.* ¶14. If the DNC's action "does not violate the Plaintiff's

constitutional rights, it would be appropriate for this Court to make such a finding and to further determine whether the National Party and State Party may implement an alternative Party-run delegate selection system which does not conflict with the National Party Rules, without running afoul of the laws of the state of Florida." *Id.* ¶15.

## ARGUMENT

"For a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief." *Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir. 1992). "Dismissal is warranted however if, assuming the truth of the factual allegations of the pleading, there is a dispositive legal issue which precludes relief." *Zivojinovich v. The Ritz Carlton Hotel Co., LLC*, 445 F. Supp. 2d 1337, 1340 (M.D. Fla. 2006). In this case, assuming the truth of all of the factual allegations of the Complaint, the Complaint fails to state any claim upon which relief can be granted. And because plantiff has no federal cause of action, and does not allege any actual controversy, the Court lacks subject matter jurisdiction over the case.

### I. The Complaint Fails to State a Federal Cause of Action Because the DNC Is Not Acting Under Color of State Law

The Complaint fails to state any federal cause of action. First, plaintiff invokes Article II of the Constitution. Complaint ¶10. No provision of that Article, however, confers any actionable rights on any individual voter. Rather Article II directs state legislatures to determine the manner in which electors for the offices of President and Vice President shall be appointed and provides the manner in which those electors shall perform their duties. U.S.CONST. art. II, § 1, cl. 2. *See, Bush v. Gore*, 531 U.S. 98, 112 (2000) (Rehnquist, C.J., concurring) (Article II is one of the "few exceptional cases in

which the Constitution imposes a duty or confers a power on a particular branch of a state's government").

Second, plaintiff suggests that the DNC "may be violating his rights" under the 14th Amendment and invokes 28 U.S.C. §1343. Section 1343(3) is the "jurisdictional counterpart" to claims brought under the nation's federal civil rights laws and authorizes private civil actions to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Section 1343(4) also permits litigants to "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." *McCormick v. First Nat'l Bank*, 322 F. Supp. 604, 605 (S.D. Fla. 1971) (Section 1343 "pertains to actions based on Acts of Congress providing for the protection of civil rights including the right to vote").

Plaintiff has failed to cite any Act of Congress allegedly violated by the DNC's actions in enforcing its delegate selection rules, so section 1343(4) is inapplicable. Section 1343(3) is likewise inapplicable in that the Complaint does not state a cause of action under the Fourteenth Amendment or any other provision of the Constitution. That is because the DNC's enforcement of its delegate selection rules as alleged in the Complaint does not constitute state action.

The Fourteenth Amendment "is not a basis for jurisdiction in a claim against a private actor under either § 1331 or § 1343. ... The Fourteenth Amendment is restricted solely to wrongs committed by the State or on behalf of the State by its agents." *Harris*

*v. McDonald's Corp.,* 901 F. Supp. 1552, 1557 (M.D. Fla. 1995). And action "under color of state law" is a prerequisite for an action seeking jurisdiction under Section 1343(3). *Hagans v. Lavine,* 415 U.S. 528, 538 (1974) (Section 1343(3) gives federal courts jurisdiction "to entertain suits to redress the deprivation, *under color of state law*, of constitutional rights") (emphasis added); *Fountain v. Metropolitan Atlanta Rapid Transit Authority,* 678 F.2d 1038, 1042 n.7 (11th Cir. 1982) (Section 1343(3) "grants to the federal courts jurisdiction to hear claims alleging *official state deprivation* of constitutional rights or rights secured by federal statutes providing for equal rights") (emphasis added).

In this case, the DNC is not exercising any power conferred or delegated by the state of Florida. The state of Florida will hold its presidential preference primary on January 29, 2008, and plaintiff will be entirely free to vote in that primary for the Democratic presidential candidate of his choice. The DNC, in enforcing its delegate selection rules, is simply refusing to recognize the results of that primary in the allocation of delegates to its national nominating convention, that is, the 2008 Democratic National Convention to be held in Denver, Colorado in August 2008. The state plays no role at all in the allocation or selection of delegates to the Democratic National Convention. Indeed, as the Complaint itself correctly indicates, FDP remains free to run its own, private, alternative process for allocating and selection of delegates and, if that process complies with the DNC's rules, the FDP will be able to send a full delegation to the Convention. Complaint ¶13.

The courts have generally found it unnecessary to decide whether a national party's enforcement of its delegate selection rules constitutes state action because, as

explained in section II. below, the courts have consistently held that even if it does, the national parties have the constitutionally protected right to enforce those rules and that right prevails over any countervailing state interest or the interest of any individual voter. *See, e.g., Cousins v. Wigoda, 419* U.S. 477 (1975); *LaRouche v. Fowler*, 152 F.3d 974 (D.C. Cir. 1998), *aff'd w/o opinion*, 529 U.S. 1035 (2000); *Wymbs v. Republican State Exec. Comm. of Florida,* 719 F.2d 1072 (11th Cir. 1983), *cert. denied*, 465 U.S. 1003 (1984). Certainly, no court, since the *Cousins* decision, has held that a national party's enforcement of delegate selection rules constitutes state action.

In *Williams v. Democratic Party of Georgia*, 409 U.S. 809 (1972) the Court summarily affirmed a district court decision holding national party delegate selection rules did not have to be pre-cleared. Later, in *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) the Court held that a political party's imposition of a registration fee for participation in its state convention in effect constituted state action, for purposes of section 5 of the Voting Rights act, because Virginia law directly conferred on the state party the power and authority to use that state convention to select its nominee for U.S. Senate. In *Morse*, the Court took pains to distinguish that situation from the enforcement of delegate selection rules, with respect to the issue of state action:

> *Williams* did not concern the selection of nominees for state elective office, but rather a political party's compliance with a rule promulgated by the Democratic National Party governing the selection of delegates to its national convention....[T]he State exercised no control over, and played no part in, the State Party's selection of delegates to the Democratic National Convention.

*Morse,* 517 U.S. at 201-02. And, in the one post-*Morse* case squarely addressing the issue of whether enforcement of national party delegate selection rules constitutes state action for purposes of Voting Rights Act section 5, the three-judge court held that it does

{TP324099;1}

7

*not*: the Act "should not be read to extend coverage that would interfere with core associational rights; specifically here, internal national party rules as followed by state parties in a covered jurisdiction." *LaRouche v. Fowler*, 77 F. Supp. 2d 80, 89 (D.D.C. 1999) (three judge court), *aff'd w/o opinion*, 529 U.S. 1035 (2000).

Because the DNC is not exercising any state-delegated power in refusing to recognize the results of the state-run primary in the allocation of delegates, the Complaint fails to state a cause of action under the Fourteenth Amendment or Section 1343.

## II. The DNC Is Not Required to Recognize the Results of the State-Run Primary in the Selection of Delegates to Its Convention

Even if plaintiff had asserted a cognizable cause of action against the DNC, plaintiff would not be entitled to any relief. Specifically, plaintiff is not entitled to a declaration by this Court that the DNC is compelled to seat delegates from Florida allocated among presidential candidates in accordance with a state-run primary that violates the national party's delegate selection rules.

In the establishment and enforcement of rules for selecting delegates to its national convention, the "national Democratic Party and its adherents enjoy a constitutionally protected right of political association." *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975). In *Cousins*, the DNC's credentials committee refused to seat a state's delegates to the 1972 Democratic National Convention, because those delegates, although elected in a state-run primary in accordance with state law, had been selected in violation of the national party's delegate selection rules. A state court ordered the delegates seated in accordance with state law; the state appellate courts upheld that order. The U.S. Supreme Court reversed, holding that the DNC had a constitutionally-protected right to

enforce its delegate selection rules, while the "States themselves have no constitutionally mandated role in the great task of the selection of Presidential and Vice-Presidential candidates." *Id.* at 489-90. "Thus, Illinois' interest in protecting the integrity of its electoral process cannot be deemed compelling in the context of the selection of delegates to the National Party Convention." *Id.* at 491.

Then, in *Democratic Party of the United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107 (1981), Wisconsin state law provided for a presidential primary open to Republicans and independents, and required delegates to vote in accordance with the results of the primary. The state submitted a delegate selection plan providing for such an open primary. The DNC's Compliance Review Commission (now the DNC Rules and Bylaws Committee) disapproved the plan because the plan violated the DNC delegate selection rule banning open primaries. The DNC committee indicated that delegates chosen under the plan would not be seated at the 1980 Convention. The State of Wisconsin sued in the state Supreme Court to force the DNC to seat the delegates. The state court ordered that delegates be seated based on the results of the state-run open primary. The U.S. Supreme Court reversed, ruling that the State of Wisconsin could not force the DNC to seat a delegation chosen in contravention of the party's rules because such a requirement would violate the party's associational rights protected by the First Amendment. 450 U.S. at 122.

The Court rejected Wisconsin's argument that its open primary law placed only a minor burden on the national party, holding that a "State . . . may not substitute its own judgment for that of the Party. *A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution.*" *Id.* at 123-24 (emphasis added). The Court held that a state

must demonstrate a "compelling" interest to warrant interference with the party's constitutionally-protected associational rights and that the state of Wisconsin had not demonstrated such an interest. The Court concluded that Wisconsin was certainly free to conduct its open primary. "But if Wisconsin does open its primary, it cannot require that Wisconsin delegates to the National Party Convention vote there in accordance with the primary results, if to do so would violate Party rules." *Id.* at 126.

Here, too, the state of Florida can run its presidential preference primary on January 29, 2008. No one seeks to stop the state from doing so. And plaintiff is perfectly free to vote in that primary, expressing his choice for the Democratic candidate for President. But Florida "cannot require that [Florida] delegates to the National Party Convention vote there in accordance with the primary results," where the primary violates national party rules. *Democratic Party of U.S. v. Wisconsin*, 450 U.S. at 126. Thus Florida cannot require that the DNC seat any delegates selected in accordance with the results of its primary. Clearly, then, the DNC can insist that the FDP choose delegates through a method that complies with national party rules or else not send any delegates to the Convention at all.

Plaintiff as an individual voter has no more right than the state itself to compel the DNC to seat delegates in violation of its own rules. In *Wymbs v. Republican State Executive Committee of Florida*, 719 F.2d 1071 (11th Cir. 1983), *cert. denied*, 465 U.S. 1103 (1984), a Republican voter challenged the national Republican Party's delegate selection rule (reflected in the state party's rules) providing for apportionment of delegates among congressional districts, on the ground that the rule violated one-person-one-vote and was therefore unconstitutional. The Court held that the case was non-justiciable for several reasons, including that:

> We think it plain that this court is an inappropriate body to decide how the Florida delegation to the Republican National Convention should be selected. The controversy…is a disagreement over a pure question of internal Republican Party policy.

719 F.2d at 1082. In addition, the Court held, even if that were not the case, "we would be constrained by the Party's countervailing *first amendment* rights of free speech and association." *Id.* at 1084 (emphasis in original). "[T]he strong first amendment associational freedoms possessed by political parties limited the district court's ability to tell the Republican Party how to conduct its internal affairs and whom it should represent." *Id.* at 1086. *See also Bachur v. Democratic National Party*, 836 F.2d 837, 841-42 (4th Cir. 1987)(in case challenging national party delegate selection rule, voter's right to vote for delegates was outweighed by the "broad, encompassing First and Fourteenth Amendment protection enjoyed by the National Party" in the establishment of delegate selection rules).

For these reasons, even if plaintiff had asserted a cognizable cause of action for violation of his rights by the DNC's enforcement of its delegate selection rules, plaintiff would not be entitled to relief; rather, the DNC would be entitled to judgment as a matter of law.

### III. Plaintiff Is Not Entitled to a Declaratory Judgment Because He Fails to Allege Any Actual Controversy

In any event, plaintiff is not entitled to a declaratory judgment, the only form of relief he is seeking in the Complaint. The Declaratory Judgment Act, 28 U.S.C. §2201, merely provides a remedy for cases "over which the courts already have jurisdiction." *Provident Life & Accid. Ins. Co. v. Transamerica-Occidental Life,* 850 F.2d 1489, 1491 (11th Cir. 1988), *cert. denied,* 489 U.S. 1081 (1989). The Declaratory Judgment Act does not itself provide the basis for jurisdiction or a cause of action. *Household Bank v.*

*JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003); *Gov't Empls. Ins. Co. v. Ourso*, 2006 U.S. Dist. LEXIS 47888, at *2 (M.D. Fla. Jul. 14, 2006) ("[t]he Declaratory Judgment Act provides no independent basis for jurisdiction"). Thus, "a plaintiff may not bring a declaratory judgment action in federal court…merely by citing the Act itself, or even by virtue of the fact that he seeks a declaration of his rights and obligations under some federal law." *Community State Bank v. Strong*, 485 F.3d 597, 607-08 (11th Cir. 2007). Rather, the Complaint must show a "substantial continuing controversy between parties having adverse legal interests," and that controversy "must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1995).

Here the Complaint does not assert any actual, real controversy between the plaintiff and the DNC. Rather, the Complaint merely suggests that, by imposing sanctions on the FDP, the DNC "*may* be violating [plaintiff's] rights under Article II and the 14th Amendment." Similarly, plaintiff suggests that implementation of the DNC's delegate selection rules "*may or may not* violate the Plaintiff's right to vote in a Presidential primary election…." Complaint ¶13 (emphasis added). The Complaint concludes by suggesting that, "*If* the decision of the National Party violates the Plaintiff's constitutional rights, it would be appropriate for this court to make such a finding." *Id.* ¶14. Further, as the Complaint concedes, the state party's delegates would be restored and the controversy would disappear if the FDP were to run an alternative process for allocation of delegates, a process that complied with the DNC's rules. *Id.* ¶¶ 13, 15.

In this case, then, plaintiff is simply seeking a declaration of his rights in the absence of any demonstrated, existing actual controversy. He is merely asking this Court

for an advisory opinion with respect to the DNC's actions. It is well-established, however, that the "'federal courts established pursuant to Article IIII…do not render advisory opinions….This is as true of declaratory judgments as any other field.'" *Golden v. Zwickler*, 394 U.S. 103, 108 (1969), *quoting United Public Workers of America v. Mitchell*, 330 U.S. 75, 89 (1947).

For this reason, also, the Court lacks subject matter jurisdiction over the action.

## CONCLUSION

For the reasons set forth above, the Court lacks subject matter jurisdiction over this action and the Complaint fails to state a claim upon which relief can be grated. Accordingly, defendant DNC's motion to dismiss the Complaint should be granted.

Dated: <u>September 25, 2007</u>     Respectfully submitted,

<u>/s/ Charles F. Ketchey, Jr.</u>
Charles F. Ketchey, Jr., FBN 0181735
AKERMAN SENTERFITT
401 East Jackson Street, Suite 1700
Tampa, Florida 33602-5803
Telephone: (813) 223-7333
Fax: (813) 223-2837

Of counsel:
Joseph E. Sandler
General Counsel, Democratic National Committee
SANDLER, REIFF & YOUNG, P.C.
50 E Street, S.E. # 300
Washington, D.C. 20003
Telephone (202) 479-1111
Fax: (202) 479-1115

>Amanda S. LaForge
>Chief Counsel
>DEMOCRATIC NATIONAL COMMITTEE
>430 S. Capitol Street, S.E.
>Washington, D.C. 20003
>Telephone: (202) 479-5153
>Fax: (202) 572-7851
>
>Attorneys for Defendant
>DEMOCRATIC NATIONAL COMMITTEE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above Motion to Dismiss and Memorandum of Law in Support Thereof was filed in the U.S. Dist. Court via the CM/ECF System who served a copy electronically upon counsel for Plaintiff, Michael A. Steinberg, Esq., 1000 N Ashley Drive, Suite 520, Tampa, FL 33602, this 25th day of September, 2007.

>/s/ *Charles F. Ketchey, Jr.*