UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Victor DiMaio, an individual            CASE NO: 8:07-CV-1552-T-26MAP

    Plaintiff,
v.

Democratic National Committee
And Florida Democratic Party

    Defendant,
_____/

## PLAINTIFF'S RESPONSE TO MOTIONS TO DISMISS OF DEFENDANTS, DEMORCRATIC NATIONAL COMMITTEE AND FLORIDA DEMOCRATIC PARTY, MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW the Plaintiff, by and through his undersigned attorney, and files this his Response to the the Motions to Dismiss of Defendants, Democratic National Committee and Florida Democratic Party, and Memorandum of Law in support thereof.

Furthermore, Victor DiMaio, through his undersigned counsel, hereby moves the court pursuant to Federal Rule of Civil Procedure 56(b) to enter judgment for him on all claims in Plaintiff's complaint. As fully demonstrated below, and in the accompanying memorandum and exhibits, Plaintiff is entitled to a judgment as a matter of law.

## PRELIMINARY STATEMENT:

This case involves the decision of the Democratic National Committee to disallow any delegates from the State of Florida to be seated or participate in the 2008 Democratic Nominating Convention, because the State of Florida enacted a law designating a presidential preference primary date (at which time it would be determined how many committed delegates a presidential candidate would be awarded) for a date earlier than

1

the rules of the Democratic National Committee permitted. Attached hereto is a copy of a letter from the DNC to the FDP containing said decision. This letter is marked exhibit "A" and made a part hereof by reference.

The Plaintiff is a registered Democrat and resident of Hillsborough County Florida, who believes that this action of the Democratic National Committee may be unconstitutional in that it violates his rights, and the rights of other Democratic voters in the State of Florida, to equal protection under the 14th amendment to the United States Constitution.

## I.     Do actions of DNC constitute "state action"?

Plaintiff agrees with the Defendant, Democratic National Committee (hereinafter DNC) that the first step in deciding whether the action of the DNC violates the Plaintiff's constitutional rights is to determine whether the actions of the party constitute "state action". In order to succeed in a claim that a Defendant violated a Plaintiff's right under the 14th amendment, the conduct must constitute state action NCAA v. Tarkanian, 488 U.S. 179, 182 (1985).

In the case of Smith v. Allwright, 321 U.S. 649 (1944), Petitioner was an individual voter, who was denied the right to vote in a primary election conducted by a political party. The political party adopted a rule that all white citizens of the State of Texas… shall be eligible for membership in the Democratic party, and, as such, entitled to participate in its deliberations. As a result of that rule, Petitioner, a negro, was not permitted to vote in the primary election conducted by the party.

As in this case, the party argued that the Democratic party of Texas was a voluntary organization and free to select its own membership and to limit to whites,

2

participation in the party primary. They further asserted that the 14th amendment only applied to general elections and that primaries are political affairs handled by party, not governmental officers.

The Supreme Court reaffirmed that section 4 of article 1, of the Constitution authorized Congress to regulate primaries, as well as general elections U.S. v. Classic 313 U.S. 299 at 316, 317. The court went on to state "the question as to whether the exclusionary action of the party was the action of the state persists as the determinative factor".

The court concluded that while membership in party was of no concern to the state, when that privilege was also the essential qualification for voting to select nominees for a general election, the state makes the action of the party, the action of the state.

In Terry v. Adams, 345 U.S. 461 (1953), petitioners, qualified negro voters of a Texas county, sued to determine the legality of their being excluded, solely because of their race and color, from voting in elections held by an association consisting of all qualified white voters in the county. In that case, the association's elections, as in the case at bar, were not governed by state laws. The District Court issued a declaratory judgment holding invalid racial discrimination in a pre-primary election.

In the case of Georgia v. National Democratic Party, 447 F. 2d 1271 (D.C. Cir. 1971) the Court found state action in the formulas the national parties used to allocate delegates to a national nominating convention. The court concluded that by placing the nominee of the convention on the ballot, the states "have adopted this narrowing process as a necessary adjunct of their election procedures" Id. at 1276.

In the case of <u>Bode v. National Democratic Party</u>, 452 F. 2d. 1304 (D.C. Cir. 1972), the same court held that the DNC's adoption of a formula for the allocation of delegates to its 1972 National Convention was "tantamount to a decision of the states acting in concert and therefore subject to constitutional standards, applicable to state action".

However, in <u>Brown v. O'Brien</u>, 469 F.2d 563 (D.C. Cir. 1972), when the Circuit Court for the District of Columbia found that a delegate seating decision by the Credentials Committee constituted state action, and that the actions against the State of California were unconstitutional, the Supreme Court stayed the order. While the Supreme Court did not decide the issue, it found that there was a highly important question to be answered to wit: "Whether the action of the Credentials Committee was state action". In this case, the court stated "this is not a case in which claims are made that injury arises from invidious discrimination based on race in a primary contest within a single state".

In the case of <u>Cousins v. Wigoda</u>, 419 U.S. 477 (1975) the court held that an Illinois court had unconstitutionally attempted to enjoin delegates selected pursuant to Democratic Party rules from taking their seats at the 1972 National Convention. Because the case arose in the context of a state court injunction, the court found state action was clear and it was not necessary to determine whether the decisions of a national party in the area of delegate selection constitutes state or governmental action 419 U.S. 483.

In <u>Ripon Society v. National Republican Party</u>, 525 F.2nd 567 (D.C. Cir. 1975) the court pointed out "the nexus between the states and the delegate allocation formula is open to question, since the Supreme Court in <u>Cousins v. Wigoda</u>, 419 U.S. 477 (1975)

4

held that an individual state is without power to interfere with the delegate selection procedures of a National Convention. The court concluded that since the case failed on its merits, they declined to decide the state action question Id. at 576.

But in <u>Morse v. Republican Party of Virginia</u>, 517 U.S. 186 (1996), the Supreme Court stated the party was the "state" for purpose of the Voting Rights Act. Justice Stevens pointed out that the State of Virginia reserved the top two positions for the major parties to fill with their nominees, thus delegating to the parties the power to determine part of the field of candidates from which the voters must choose.

The Supreme Court's holding in Morse, however, only addresses whether the Virginia Republican Party's action were those of a state or political subdivision under the Voting Rights Act, and not whether those of a state under the Constitution.

Florida Statute 101.2512 states "the supervisor of elections of each county shall print on ballots to be used in the county at the next general election, the names of candidates who have been nominated by a political party and the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code". The State of Florida has given the candidate that emerges from the Democratic Nominating Convention preference in access to the state's general election ballots. In <u>Mrazek v. Suffolk County Board of Elections</u>, 630 F.2d 840, 894 (2$^d$ Cir. 1980), the court suggested that nominating procedures must conform to constitutional requirements, because ensured access to the ballot may constitute a form of state action.

Furthermore, Title 26 U.S.C. 9008(b) provides that the National Committee of a major party shall be entitled to payments to conduct its Presidential nominating

5

convention in amounts up to 4 million dollars. By accepting federal funds, the DNC is inextricably intertwined with the United States Government and clearly the nominating convention is state action for purposes of selecting a candidate for President.

## II.     Assuming "state action" will Plaintiff's 14th amendment rights be violated?

Assuming, arguendo, state action, the next matter to resolve is whether the Defendant, DNC, is required to accept the results of the Florida Presidential Preference Primary election on January 29, 2008, and assign to presidential candidates, entitlement to committed delegates, based on the percentage of votes each candidate receives (provided the percentage reaches a certain threshold).

In the case of Cousins v. Wigoda, 419 U.S. 477 (1975), delegates had been elected in the state-run Illinois primary as delegates to the 1972 Democratic Nominating Convention, but another group of delegates (Cousins) chosen at caucuses, successfully challenged the seating of the Wigoda delegates before the Credentials Committee.

The Supreme Court held that the DNC enjoyed a constitutionally protected right of political association and that Illinois' interest in ensuring that its primary results were honored, cannot be deemed compelling in the context of selecting delegates to the National Party Convention, Id at 491.

In Wisconsin v. DNC, 450 U.S. 107 (1981), the Supreme Court held that a state may not compel the National Party to seat a delegation chosen in a way that violates the rules of the party. It must be noted, however, in Cousins and in Wisconsin, the court based its decision on the DNC's constitutional rights of association and free speech. In

both cases, the issue was not which presidential candidate would be entitled to be assigned what percentage of committed delegates, but whether the National Party had the right to exclude delegates who were chosen in such a way so as to violate party rules with respect to the selection of delegates.

In the case herein, the DNC's qualm is not with respect to the voters who elect the delegates (as in Wisconsin) or in the demographic makeup of the delegates (as in Cousins), but with the timing of the Presidential Preference Primary, at which time it would be decided what percentage of the committed delegates would be assigned to the presidential candidates.

The Plaintiff posits that the actions of the state, in scheduling its Presidential Preference Primary on January 29, 2008, in no way violates any constitutional right of the party to association or speech.

In Ripon Society v. National Republican Party, 525 F.2d 567 (D.C. Cir. 1975) the DC Circuit Court found that the Plaintiff's Equal protection interest in the delegate selection rules of a political party was "offset by the 1st Amendment rights exercised by the party in choosing the delegate allocation formula that it did". They concluded that even if the party were a state actor, the constitution was satisfied if the party rules rationally advanced some legitimate interest of the party in winning elections or otherwise achieving its political goals.

In this case, there are no racial, gender, or national origin classifications as in the white primary cases, but likewise, there are no 1st amendment rights of the party at issue either. Instead, there is disparity in the rules governing the date an election may be held in some states versus other states. Clearly, there is unequal treatment of the electorate of

7

the various states. The question to be resolved then, is what level of scrutiny is to be applied in this situation in determining whether the actions of the National Party violate the Plaintiff's 14th amendment rights.

The Plaintiff posits that the National Party derives its privilege to have its nominee placed on the Florida ballot, from Florida Law. Florida Statute 101.2512 provides that the supervisor of elections shall print on the general election ballot the names of candidates nominated by primary election … pursuant to the requirements of this code. The key phrase in this statute is "pursuant to the requirements of this code". If the National Party does not comply with state law in the nomination of its presidential candidate, the party loses its privilege to have the name of its candidate placed on the general election ballot. Of course, the candidate could otherwise qualify to appear on the ballot or run as a write-in candidate, but for all practical purposes, unless the candidate is entitled to placement on the ballot as the nominee of a political party, it greatly diminishes his or her ability to win the electoral votes for the state.

The Plaintiff posits that if by enforcing Florida Law, the state would violate the constitutional rights of the National Party, the State of Florida may not exclude the National Party's nominee from the ballot, as long as the National Party otherwise complied with Florida Law. On the other hand, if the National Party violates the Equal Protection Rights of citizens of the State of Florida, and does not recognize the allocation of committed delegates resulting from the Presidential Preference Primary election, the state is within its rights to exclude the Defendant's nominee from it ballot.

The Plaintiff further posits that the National Party, through its executive committee, is without authority to engage in such conduct so as to deprive its members of

equal protection under the 14th amendment and that a member has the right to bring a "derivative" action where the conduct of the executive committee constitutes malfeasance and breach of fiduciary duty so as to seriously jeopardize the chance of any nominee selected at the National Convention, of being elected president.

### III.  If the DNC did not violate Plaintiff's 14th amendment rights, what is the duty of the State Party?

Plaintiff posits that the State Party, as an agent of the National Party and representative of the Plaintiff, has a fiduciary duty to ensure compliance with National Party rules, if said rules would not result in a violation of the Plaintiff's constitutional rights, and would not disqualify the eventual party nominee from appearing on the general election ballot.

If this court finds that the National Party is within its rights to strip Florida of all of its delegates to the National Nominating Convention, unless it conducts an alternate delegate selection system, which is in compliance with national rules, but that by doing so, this action would result in the eventual nominee's name not appearing on the general election ballot, as the Party's candidate, the Defendant state party is in a precarious position.  On the one hand, its inaction will result in the state not being represented at the Democratic Nominating Convention, but on the other hand, its compliance with the National Party would result in the party's nominee almost certainly not winning the electoral votes from Florida in the general election, due to its candidate's name not appearing on the ballot as the party's candidate.

But if the court finds that the National Party is within its right to strip Florida of its delegates due to the scheduling of its Presidential Preference Primary prior to

February 5, 2008, and that Florida may not refuse to place the name of the Defendant's nominee on its ballot, even though it would have conducted a delegate selection process differently than as set forth in the Florida Statutes, then Defendant, State Democratic Party, would be breaching its duty to Plaintiff and to the DNC, by not conducting an alternative delegate selection process in compliance with National Party rules.

## IV.　　　　STANDING

The Plaintiff contends that this court has standing to enter a declaratory judgment pursuant to 28 U.S.C. 2201, which provides in part, that "in a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other relations of any interested party seeking such declaration, whether or not, further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Article III section 2 of the United States Constitution grants jurisdiction to this court of cases arising under the United States Constitution.

Article III standing requires a party to show actual injury, a causal relation between that injury and the challenged conduct, and the likelihood that a favorable decision by the court will redress the alleged injury Lugan v. Defenders of Wildlife 504 U.S. 555, 560-61 (1992.)

When government action or inaction is challenged by a party who is a target or object of that action, as in this case, "there is ordinarily little question that the action or inaction has caused him injury and that a judgment preventing or requiring the action will redress it" Lugan, 504 U.S. at 561.

10

In the case of <u>Cousins v. Wigoda</u> 419 U.S. 477 (1975), following a primary, Cousins brought a declaratory judgment action seeking a ruling that he was duly elected to the Democratic Nominating Convention in accordance with Illinois law and sought an injunction against Respondent to prohibit them from interfering or impeding the functioning of the Petitioner a duly elected delegate. In that case, the District Court assumed jurisdiction.

In the case of <u>Terry v. Adams</u> 345 U.S. 461 (1953), Plaintiffs were Blacks who instituted an action against a political party in district court for declaratory and injunctive relief. The district court assumed jurisdiction and entered an order declaring Plaintiffs were legally entitled to vote in the party's primary election.

The Plaintiff herein is not seeking a mere advisory opinion. He has clearly shown a "substantial continuing controversy between parties having adverse legal interest and that the controversy is real and immediate.

As of the date of this pleading, Plaintiff is faced with the threat that his vote in the President Preference Primary election will not count in the nomination process. It is disingenuous for the DNC to assert that Plaintiff is not being deprived of his right to vote in a meaningful way. What Plaintiff is clearly asserting is that he does not know who is depriving him of a right to a meaningful vote, the National Party or the State party.

## CONCLUSION

Plaintiff posits that there are no material facts in dispute and that a ruling in this case can be made as a matter of law. The Plaintiff requests that this court find that it has jurisdiction and authority to enter a declaratory judgment to determine the rights and responsibilities of the parties herein, and that the issues are ripe. The Plaintiff further

11

requests that this court deny the motions to dismiss of the Defendants and enter a declaratory judgment determining whether the National Party must accept the results of the Presidential Preference Primary of the State of Florida, scheduled for January 29, 2008, regardless of National Party rules and decisions to the contrary, and assign entitlement to committed delegates to presidential candidates, based on the results of that election.

        Respectfully Submitted,

        s/ Michael A. Steinberg  
        Michael A. Steinberg, Esquire  
        1000 N. Ashley Drive Suite 520  
        Tampa, Florida 33602  
        Telephone #: (813) 221-1300  
        Facsimile #: (813) 221-1702  
        Frosty28@aol.com  
        Attorney for the Plaintiff  
        Florida Bar No: 340065

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on September 26, 2007, a true and correct copy of Plaintiff's Response to Motions to Dismiss of Defendants, Democratic National Committee and Florida Democratic Party, Motion for Summary Judgment, and Memorandum of Law in Support thereof was filed in the United States District Court for the Middle District of Florida via the CM/ECF System and a copy served upon counsel for Defendant, Democratic National Committee, Charles Ketchey, Jr. Akerman Senterfitt, 401 East Jackson Street, 1700, Tampa, FL 33602-5803 and upon counsel for Defendant, Florida Democratic Party, Sean Shaw, Messer, Caparello & Self, P.A., P.O. Box 15579, Tallahassee, FL 32317. I further certify that a copy of the foregoing document and the notice of electronic filing were mailed by first-class mail to the following non-CM/ECF participants: Joseph Sandler, Sandler, Reiff & Young, P.C., 50 E. Street, S.E. #300, Washington, D.C. 20003; and Amanda S. La Forge, Chief Counsel, Democratic National Committee, 430 S. Capitol Street, S.E., Washington, D.C. 20003.

                                                              s/ Michael A. Steinberg\_\_\_\_
                                                              Michael A. Steinberg, Esquire
                                                              1000 N. Ashley Drive Suite 520
                                                              Tampa, Florida 33602
                                                              Telephone #: (813) 221-1300
                                                              Facsimile #: (813) 221-1702
                                                              Frosty28@aol.com
                                                              Attorney for the Plaintiff
                                                              Florida Bar No: 340065