# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

VICTOR DIMAIO,

       Plaintiff,

v.                                 CASE NO:  8:07-cv-1552-T-26MAP

DEMOCRATIC NATIONAL
COMMITTEE and FLORIDA
DEMOCRATIC PARTY,

       Defendants.

_____/

## O R D E R

      This cause comes before the Court on Defendants' motions to dismiss Plaintiff's

complaint and Plaintiff's response.[1]  After careful consideration of the parties'

submissions, arguments, and the controlling law, the Court is of the opinion that the

motions are due to be granted.  The Court is also of the view that allowing Plaintiff to

amend to cure the deficiencies of his complaint would be an exercise in futility.

---

[1]  See dockets 1, 10, 11, and 13.

Consequently, the Court will dismiss the case with prejudice and direct the Clerk to enter judgment for Defendants.

## BACKGROUND

This is an action for declaratory relief pursuant to 28 U.S.C. §§ 1331, 1343, and 2201. Plaintiff Victor DiMaio ("DiMaio") is a citizen of Hillsborough County, Florida, and a registered Democrat. Defendant Democratic National Committee ("DNC") is the official representative entity of the Democratic Party which is responsible for promulgating the Delegate Selection Rules for the 2008 Democratic National Convention ("the Rules").[2] Defendant Florida Democratic Party ("FDP") is the official representative entity of the Democratic Party in the State of Florida which is responsible for ensuring compliance with the Rules of the DNC regarding the delegate selection process for the 2008 Democratic National Convention ("the Convention").

The Rules of the DNC provide that no state presidential preference primary election may be held prior to the first Tuesday in February or after the second Tuesday in June, in the calendar year of the Convention, except for the states of New Hampshire, Iowa, Nevada, and South Carolina.[3] The Rules further provide that the DNC may impose sanctions for violations by a state of these rules, including the reduction or elimination of the number of delegates to the Convention.[4]

---

[2]  See docket 1, Exhibit A.

[3]  See docket 1, Exhibit A, Rule 11(A).

[4]  See docket 1, Exhibit A, Rule 20(C)(1)(a) and (C)(5) and (6).

In 2007, the Florida legislature amended section 103.101(a) of the Florida Statutes to advance the presidential preference primary from the second Tuesday in March to the last Tuesday in January.  The amendment now mandates that "[e]ach political party other than a minor political party shall, on the last Tuesday in January in each year the number of which is a multiple of 4, elect one person to be the candidate for nomination of such party for President of the United States or select delegates to the national nominating convention, as provided by party rule."  On or about August 25, 2007, according to DiMaio's complaint, the DNC's Rules and Bylaws Committee voted not to allow the State of Florida to seat delegates at the Convention because of the enactment of the amendment moving the State primary to a date which violates the Rules, unless within 30 days the FDP moves its primary back at least seven days from the current January 29, 2008 date.[5]

*ARGUMENTS*

DiMaio argues that by refusing to recognize the results of the State of Florida's presidential primary election, held in accord with section 103.101(a), and by refusing to seat the Florida delegation so elected, the DNC may or may not violate his rights under Article II and the Equal Protection Clause of the 14th Amendment to the United States Constitution.  DiMaio further asserts that the FDP has an obligation to its members in the State of Florida to ensure that they are represented at the Convention and are allowed to

---

[5]  See docket 1, paragraph 9.

participate in selecting the Democratic nominee for United States President.  DiMaio further posits that if the decision of the DNC does in fact violate his constitutional rights, it would be appropriate for this Court to make a finding to that effect.  In the alternative, and if the Court finds that the decision of the DNC does not violate his constitutional rights, DiMaio requests that the Court determine whether the FDP must implement an alternative party-run delegate selection system which neither conflicts with the DNC rules nor runs afoul of the laws of the State of Florida.

The DNC and the FDP, in turn, seek an order dismissing the complaint pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, based on DiMaio's lack of standing under Article III of the Constitution,[6] as well as lack of subject matter jurisdiction. They also contend, in reliance on Rule 12(b)(6), Federal Rules of Civil Procedure, that DiMaio has wholly failed to state a claim upon which relief can be granted.  As noted, after carefully reviewing the parties' submissions, the Court determines that DiMaio's complaint is due to be dismissed with prejudice.

---

[6]  This constitutional provision limits the jurisdiction of the federal courts to actual cases or controversies between enumerated entities.

*ANALYSIS*

In the words of the Eleventh Circuit Court of Appeals, "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000). As the Eleventh Circuit has further explained, it is a doctrine that stems directly from Article III's case or controversy requirement and implicates a court's subject matter jurisdiction to such a critical extent that without standing a court is powerless to act. See, e.g., Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975-76 (11th Cir. 2005).

In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), the Supreme Court, speaking through Justice Scalia, summarized its prior precedent in terms of what a plaintiff must establish at an irreducible constitutional minimum to enjoy standing under Article III. First, a plaintiff must have suffered an injury in fact which translates into an invasion of a legally protected interest which is concrete and particularized and actual or imminent as opposed to conjectural or hypothetical. Second, there must be a causal connection between the injury of which the plaintiff complains and the conduct of the defendant such that plaintiff's injury is fairly traceable to the challenged acts of the defendant and not the independent acts of a third party not before the court. Third, it must be likely, as opposed to merely speculative, that plaintiff's injury will be redressed by a favorable decision from the court. The fact that a plaintiff, such as DiMaio, invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, in support of relief from a court does not relieve him of the burden of satisfying the

constitutional prerequisites for standing.  See Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).  Indeed, as noted by the court in Emory, § 2201(a) echoes the case or controversy requirement of Article III and provides that a declaratory judgment may only be issued by a federal court "[i]n a case of actual controversy within its jurisdiction . . ." Id. (citing § 2201).

Measured against these legal standards, DiMaio wholly fails to satisfy the constitutional criteria for standing under Article III with regard to the first element.  His complaint does not assert any actual or real controversy with the DNC or the FDP.  DiMaio "posits" that by imposing sanctions on the FDP, the DNC "may be violating his rights under Article II and the 14th Amendment."[7]  Similarly, he alleges that implementation of the DNC's Rules "may or may not violate Plaintiff's right to vote in a Presidential primary election ...."[8]  DiMaio concludes by suggesting that, "if the decision of the National Party violates the Plaintiff's constitutional rights, it would be appropriate for this court to make such a finding."[9]  These allegations amount to nothing more than sheer speculation on the part of DiMaio that his constitutional rights are being violated.  Consequently, he is merely asking the Court for an advisory opinion with respect to the actions and obligations of the DNC and the FDP.  It is well-established, however, that "[t]he federal courts established pursuant to Article III of the Constitution do not render

_____

[7]  See docket 1, paragraph 10 (emphasis added).

[8]  See docket 1, paragraph 13 (emphasis added).

[9]  See docket 1, paragraph 14 (emphasis added).

advisory opinions.  For adjudication of constitutional issues, concrete legal issues,

presented in actual cases, not abstractions, are requisite.  This is as true of declaratory

judgments as any other field." United Public Workers of America v. Mitchell, 330 U.S.

75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947).  The Court concludes, therefore, that

because DiMaio has no standing to bring this lawsuit, the Court lacks subject matter

jurisdiction and is powerless to act.  See Bochese, 405 F.3d at 974 (observing that

standing is perhaps the most important jurisdictional doctrine and as with any

jurisdictional requisite we are powerless to hear a case when it is lacking).

     Even if DiMaio was able to make the requisite showing for standing, his complaint

fails to state a claim upon which relief can be granted.  In determining whether to grant a

12(b)(6) motion, a court should not dismiss a complaint if it includes "enough facts to

state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127

S.Ct. 1955, 1974 (2007) (dismissing complaint because plaintiffs had not "nudged their

claims across the line from conceivable to plausible").  In making this determination, a

court takes the well-pled facts of the complaint as true and construes the facts favorably

to the plaintiff.  See 5A Charles A.Wright & Arthur R. Miller, Federal Practice and

Procedure § 1368 (1990).  While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.

Ct. at 1964-65.  To survive a motion to dismiss under Twombly, a complaint's factual

allegations, if assumed to be true, "must be enough to raise the right to relief above the speculative level." Id. at 1965.

As previously stated, DiMaio argues that the actions of the DNC may be violating his rights under Article II of the United States Constitution. However, no provision of that Article confers any actionable right on any individual voter. Instead, Article II directs state legislatures to determine the manner in which electors for the offices of President and Vice President shall be appointed and provides the manner in which those electors shall perform their duties. See U.S. Const. Art. II, § 1, cl. 2.

DiMaio next argues that the DNC may be violating his equal protection rights under the Fourteenth Amendment of the United States Constitution. To that end, he invokes the provisions of 28 U.S.C. § 1343. Section 1343 is the jurisdictional counterpart to claims brought under the nation's federal civil rights laws. See Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). It authorizes private civil actions to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(3) (emphasis added). Therefore, § 1343(3) grants to the federal courts jurisdiction to hear only those "claims alleging official state deprivation of constitutional rights." Fountain v. Metropolitan Atlanta Rapid Transit Auth., 678 F.2d 1038, 1042 n. 7 (11th Cir. 1982) (emphasis added).

In this case, DiMaio fails to state a cause of action because the DNC and the FDP do not exercise any power conferred or delegated by the State of Florida; rather, they are private actors.  As the DNC and FDP correctly argue, the State of Florida plays no role at all in the allocation or selection of delegates to the Convention.  DiMaio himself even alleges that the FDP remains free to run its own private, alternative process for allocating and selecting delegates and, if that process complies with the DNC's rules, the FDP will be able to send a full delegation to the Convention.[10]  The DNC, in enforcing its delegate selection rules, is simply refusing to recognize the results of that primary in the allocation of delegates to the Convention.  This does not amount to state action.

Finally, even if DiMaio could somehow overcome the standing and state action requirements, the Supreme Court has consistently recognized that national political parties have a constitutionally protected right to manage and conduct their own internal affairs, including the enforcement of delegate selection rules and the decision as to which state delegates it will recognize, under the First Amendment's right to freedom of association, and that associational right generally prevails over any countervailing state interest or the interest of any individual voter.  See California Democratic Party v. Jones, 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); Democratic Party of the United States v. Wisconsin ex rel. LaFollette, 450 U.S. 107, 101 S.Ct. 1010, 67

---

[10]  See docket 1, paragraph 13.

L.Ed.2d 82 (1981); Cousins v. Wigoda, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595

(1975).   In LaFollette, for example, the Supreme Court specifically stressed that "a State,

or a court, may not constitutionally substitute its own judgment for that of the Party.  A

political party's choice among the various ways of determining the makeup of a State's

delegation to the party's national convention is protected by the Constitution."  450 U.S.

at 123-24, 101 S.Ct. at 1020 (footnote omitted).  The Court in LaFollette also observed

that a state must demonstrate a "compelling" interest to warrant interference with the

party's constitutionally-protected associational rights and that the State of Wisconsin had

not met its burden of establishing such a compelling state interest.  450 U.S. at 126, 101

S.Ct. at 1021.  Therefore, in the absence of a compelling state interest, which in this case

DiMaio has not even alleged, the Court cannot require Florida delegates to the

Convention to vote there in accordance with the primary results where the primary

violates the DNC's rules.  In the Court's view, and in light of the cited Supreme Court

decisions, the DNC can insist that the FDP choose delegates through a method that

complies with DNC Rules or else not send any delegates to the Convention at all.

     Furthermore, DiMaio, as an individual voter, has no more right than the State of

Florida itself to compel the DNC to seat delegates in violation of its own Rules.  See

Bachur v. Democratic Nat'l Party, 836 F.2d 837, 841-42 (4th Cir. 1987) (determining that

the voter's right to vote for delegates was outweighed by the "broad, encompassing First

and Fourteenth Amendment protection enjoyed by the National Party" in the

establishment of delegate selection rules).  Besides, DiMaio makes no allegation that he

will not be permitted to vote.  The State of Florida will hold its presidential primary on

January 29, 2008, and he will be entirely free to vote in that primary for the Democratic

presidential candidate of his choice.

Although DiMaio relies upon the Supreme Court's holdings in <u>Smith v. Allwright</u>,

321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) and <u>Terry v. Adams</u>, 345 U.S. 461, 73

S.Ct. 809, 97 L.Ed. 1152 (1953), in asking the Court to declare the DNC's actions

unconstitutional, his reliance is misplaced.  The factual issues and questions of law

presented in this case are clearly distinguishable from those cases.  <u>Smith</u> and <u>Terry</u>

involved claims that the rules of two Democratic parties in the State of Texas, which were

prescribed by the State, were racially discriminatory because they excluded blacks from

even voting in the party's primaries and thus violated the Fifteenth Amendment.[11]

DiMaio, on the other hand, fails to allege that he will be barred from voting based on his

race or color and, furthermore, fails to demonstrate any state action.  Instead, his

complaint merely sets out a speculative claim of unequal treatment based upon the DNC's

refusal to recognize the results of Florida's primary election and refusal to seat the Florida

delegation.

In closing, the Court would echo the words of the Supreme Court that this is a case

in which the Convention, and not a court, is the proper forum for determining this intra-

---

[11]   Section 1 of the Fifteenth Amendment provides that "[t]he right of citizens of
the United States to vote shall not be denied or abridged by the United States or by any
State on account of race, color, or previous condition of servitude."  Section 2 confers on
Congress the "power to enforce this article by appropriate legislation."

party dispute with regard to the seating of the State of Florida's delegates.  See Cousins, 419 U.S. at 491, 95 S.Ct. at 549 (citing O'Brien v. Brown, 409 U.S. 1,4, 92 S.Ct. 2718, 2720, 34 L.Ed. 2d 1 (1972)).  In the Court's view, and in light of the specific allegations of DiMaio's complaint measured against controlling Supreme Court precedent, it is a matter of foregone conclusion that this Court is not the appropriate entity to decide whether the Florida delegation to the Convention should be seated in the event the State of Florida proceeds to hold its presidential primary on the date specified in section 103.101(a).  See Wymbs v. Republican State Executive Comm. of Florida, 719 F.2d 1072, 1082 (11th Cir. 1983).[12]

---

[12]  The Court is aware as a matter of public knowledge that another lawsuit was just filed in the Northern District of Florida challenging the DNC's decision not to seat Florida delegates to the Convention selected in compliance with section 103.101(a).  The Court emphasizes that its decision in this case is framed *only* by the allegations of DiMaio's complaint.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED** as follows:

1)      Defendants' Motions to Dismiss the Complaint (Dkts. 10 & 11) are granted.

2)      This case is dismissed with prejudice.

3)      The clerk is directed to enter judgment in favor of Defendants, terminate any

pending motions/deadlines, and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on October 5, 2007.


        s/*Richard A. Lazzara*
        **RICHARD A. LAZZARA**
        **UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record

-13-